**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| DSI RENAL HOLDINGS LLC, *et al.,* | : | Case No.  11-11722 (KBO) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |
| | : | **Objection Deadline: January 9, 2020 at 4 p.m. ET** |
| | : | **Hearing Date: February 12, 2020 at 10 a.m. ET** |
| | : | **Related D.I. 143, 146, 151** |

**CHAPTER 7 TRUSTEE'S LIMITED RESPONSE TO HEALTHCLAIM RECOVERY
LLC'S OBJECTIONS TO PROOFS OF CLAIM NOS.  15-1 AND 16-2 AND
MOTION FOR AN ORDER TO STAY OBJECTIONS TO PROOFS OF CLAIM**

Alfred T. Giuliano (the "Trustee"), the Chapter 7 Trustee for the jointly administered estates of debtors, DSI Renal Holdings LLC, DSI Hospitals, Inc., and DSI Facility Development, LLC (collectively, the "Debtors"), by and through his counsel, hereby submits this limited response to Healthclaim Recovery LLC's ("Healthclaim Recovery") Objections to Proof of Claim No. 15-1 filed by MPT Bucks County, L.P. and Claim No. 16-2 filed by Eva M. Lemeh, Chapter 7 Trustee ("Tennessee Bankruptcy Trustee") for Bucks County Oncoplastic Institute, LLC [D.I. 143, 146, 151] (the "Claim Objections"), and respectfully requests the entry of an order staying the Claim Objections ("Motion").  In support of this Motion, the Trustee respectfully states as follows:

**INTRODUCTION**

1.     The Trustee moves for a stay and files his limited response to the claims objections filed by Healthclaim Recovery, which is owned by the defendants in the Trustee's Adversary Proceeding (defined below).  Those same defendants, with unclean hands, who defrauded the

---

[1] As part of the DSI Restructuring described in detail *infra*, the Debtors' prior ultimate parent, DSI Holding Company, Inc. was merged into debtor, DSI Renal Holdings LLC, with DSI Renal Holdings LLC as the surviving parent.

Active\106155332.v11

estate, purchased a $48,000 claim in order to commence a claims objection process, the cost of which will far exceed the amount of the claim they purchased. Why? Because, as they tried to game the bankruptcy process before with their fraudulent conduct, they now try a second time to game the process in an attempt to avoid the consequences of that conduct. By asserting these objections now, they (1) look to force the Court to address the objections; (2) force creditors of the estate to litigate over the validity and amount of their claims; and (3) require the Trustee to participate in premature objection proceedings at a substantial cost to the estate – all without knowing whether there will ever even be a distribution to creditors. This Court should stay these objections until interested parties know whether or not a distribution to creditors will be made as set forth in the Handbook for Chapter 7 Trustees.

## JURISDICTION

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)-(B).

3. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought herein are §§ 105(a), 501, 502 and 704 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5. On June 3, 2011 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

### A. District Court Action and Adversary Proceeding

6. On May 20, 2013, the Trustee commenced a civil action against certain officers, directors and controlling shareholders of the Debtors in the United States District Court for the Eastern District of Pennsylvania under caption *Alfred T. Giuliano, as Chapter 7 Trustee v. CDSI I Holding Company, Inc. et al.*, E.D.PA, Case No. 2:13-cv-02776-CMR (the "District Court Action").

7. Pursuant to the District Court Action, the Trustee seeks *inter alia*: (a) to avoid as fraudulent transfers various transactions, transfers and agreements executed and implemented in connection with (i) the January 11, 2010 global restructuring (the "DSI Restructuring") of the Debtors and their affiliates, including operating subsidiary DSI Renal, Inc. ("DSI Renal"), and (ii) the February 2011 sale of DSI Renal to DaVita, Inc. ("DaVita") for approximately $700 million (the "DaVita Merger Transaction"); and (b) to recover in excess of $425 million from the Defendants,[2] who include transferees of the fraudulent transfers, officers, directors and/or controlling shareholders who orchestrated, implemented and profited from alleged wrongdoing, and aiders and abetters of the wrongdoing of others. [Adv. Pr. No. 14-50356-KBO, D.I. 10, at p. 2].

8. In short, the District Court Action alleges that the DSI Restructuring was part of an unlawful scheme to strip out substantially all of the assets of debtor, DSI Renal Holdings LLC for the benefit of the Debtors' largest shareholders and largest insider creditors, and to shield the

---

[2] As defined in the District Court Action, "Defendants" include: Michael Schnabel, Bruce Pollack, Leif Murphy, Robert Bergmann, Ken Kencel, Jay Yalowitz, Centre Partners Management LLC, Centre Bregal Partners, L.P., Centre Capital Investors IV, L.P., Centre Capital Non-Qualified Investors IV, L.P., Centre Partners Coinvestment IV, L.P., Centre Partners IV L.P., Centre Partners IV LLC, Centre Partners Coinvestment V, L.P., Centre Capital Investors V, L.P., Centre Capital Non-Qualified Investors V, L.P., Centre Bregal Partners II, L.P., Centre Partners V L.P., Centre Partners V LLC, The Northwestern Mutual Life Insurance Company, The Northwestern Mutual Life Insurance Company for its Group Annuity Separate Account, Apollo Investment Corporation, and Ares Capital Corporation.

Debtors' assets from the claims of more than 200 of the Debtors' outside creditors that the insiders wished to avoid.  [*Id.*].

9.      On or about May 7, 2014, the District Court Action was transferred to this Court as Adversary Proceeding No. 14-50356-KBO (the "Adversary Proceeding").  [Adv. Pr. No. 14-50356-KBO, D.I. 1].  Since then, in the Adversary Proceeding, the Trustee and Defendants have actively litigated the claims asserted in the District Court Action.

10.     On July 20, 2017, this Court issued its opinion and order on Defendants' Motion to Dismiss the Trustee's complaint in the Adversary Proceeding.  [Adv. Pr. No. 14-50356-KBO, D.I. 56, 57].

11.     On April 30, 2019, Defendants in the Adversary Proceeding filed multiple motions for summary judgment.  [Adv. Pr. No. 14-50356-KBO, D.I. 174, 175, 177, 178, 179, 180, 181, 182, 184, 185, 186, 188, 189, 190, 191, 192, 193, 195].

12.     Among the motions, Defendants filed a Motion For Partial Summary Judgment Limiting Any Recoveries To The Amount Necessary To Satisfy Allowed Creditor Claims ("Recovery Cap Motion").  [Adv. Pr. No. 14-50356-KBO, D.I. 189].

13.     In the Recovery Cap Motion, Defendants ask the Court to issue an order providing that the Trustee's recovery in the Adversary Proceeding "shall not exceed the amount required to pay allowed creditor claims in the Debtor's chapter 7 case. . . ." [*Id.* at 18].

14.     On May 30, 2019, the Trustee filed an Omnibus Memorandum In Opposition To Defendants' Motions for Summary Judgment ("Omnibus Opposition"), which addressed, among other things, issues raised in the Recovery Cap Motion.  [Adv. Pr. No. 14-50356-KBO, D.I. 205].

4

15. On September 13, 2019, this Court heard oral argument on the Recovery Cap Motion, as well as certain other summary judgment motions. [Adv. Pr. No. 14-50356-KBO, D.I. 238, 241].

16. To date, the Court has not ruled on the Recovery Cap Motion.

**B. Proofs of Claim filed by Bucks County Oncoplastic Institute, LLC and MPT of Bucks County, L.P.**

17. In what constitutes an obvious attempt at gamesmanship, to derail the Trustee's litigation in the Adversary Proceeding, after filing the Recovery Cap Motion, Defendants formed a new Delaware limited liability company (Healthclaim Recovery) and used it to acquire a $48,676.31 unsecured claim in the Debtors' bankruptcy case. [D.I. 134]. As further detailed below, Defendants (via Healthclaim Recovery) then filed claim objections to two large proofs of claim filed in the Debtors' bankruptcy case in an attempt to reduce the claims pool such that, if the Recovery Cap Motion is granted, Defendants hope to avoid the consequences of their fraudulent conduct.

18. Bucks County Oncoplastic Institute, LLC ("Bucks County Hospital"), one of the Debtor's operating subsidiaries, developed, owned and operated a specialty breast cancer treatment institute in Bucks County, Pennsylvania. [Adv. Pr. No. 14-50356-KBO, D.I. 205, p. 3 fn. 3].[3]

19. MPT of Bucks County, LP ("MPT") is a secured creditor of the Bucks County Hospital whose debt was in part guaranteed by debtor, DSI Renal Holdings, LLC ("DSI Parent"). [D.I. 205, p. 8]

20. Bucks County Hospital commenced a Chapter 7 bankruptcy case in Tennessee on March 30, 2009, captioned *In re Bucks County Oncoplastic Institute, LLC*, *Debtor*, Bankr. M.D.

---

[3] The Trustee incorporates by reference the facts and exhibits set forth in his Omnibus Opposition as if fully set forth herein. [Adv. Pr. No. 14-50356-KBO, D.I. 205, 206, 207, 208].

Tenn., Case No. 3:09-bk-03570 (the "Tennessee Bankruptcy Case"). [Adv. Pr. No. 14-50356-KBO, D.I. 205, p. 8].

21. As reflected on the schedules filed by the debtor in the Tennessee Bankruptcy Case, Bucks County Hospital owed in excess of $36 million to more than 200 creditors. However, the bankruptcy schedules filed in the Tennessee Bankruptcy Case were materially false. [*Id.*]

22. Notwithstanding that in numerous internal documents DSI Parent had recognized and admitted that it was liable to numerous creditors of Bucks County Hospital, the Debtor's status as "codebtor" for Bucks County Hospital was omitted from the schedules, and the Tennessee Bankruptcy Case was closed without that status ever having been revealed. [*Id.* at pp. 8-9].

23. By omitting DSI Parent as a codebtor, the Defendants diminished the likelihood that the Bucks County Hospital's creditors would commence litigation or take other action, such as the commencement of an involuntary bankruptcy proceeding against DSI Parent, which would have torpedoed the contemplated DaVita Merger Transaction. [*Id.* at p. 9].

24. The Tennessee Bankruptcy Trustee distributed approximately $215,000 to about forty creditors on account of the initially scheduled claims which had exceeded $36 million. [*Id.* at p. 10].

25. On January 11, 2013 – as a result of Defendants' wrongdoing, uncovered and identified by the Trustee in the Adversary Proceeding – the United States Trustee for the Middle District of Tennessee filed a motion to reopen the Tennessee Bankruptcy Case. [*Id.*].

26. On February 6, 2013, the Tennessee Bankruptcy Court granted the motion and reopened the Tennessee Bankruptcy Case. [*Id.*].

27. As to creditor MPT, the avoidance of whose debt was an express driver of the fraudulent scheme, the Trustee's investigation revealed a successful, fraudulent effort to obtain a release from MPT. [*Id*. at p. 10 fn 30].

28. MPT is aware of the Trustee's investigation, which included clear and convincing evidence of the Debtor's fraudulent scheme to gain a release from MPT on the eve of the DaVita Merger Transaction by misleading MPT about the Restructuring and concealing the impending sale to DaVita. [*Id*.].

29. On May 31, 2013, MPT filed Proof of Claim No. 15-1 in the unsecured amount of $10,400,787.98.

30. On August 22, 2013, Tennessee Bankruptcy Trustee filed Proof of Claim No. 16-1, which was amended on October 11, 2013 as Claim No. 16-2 in the unsecured amount of $151,822,439.82.

### C. Healthclaim Recovery LLC's Objections to Proofs of Claim

31. Healthclaim Recovery is an entity that was formed by certain Defendants in June 2019.[4] *See e.g.,* Delaware Department of State Corporate Entity Search, attached hereto as Exhibit A.

32. The Trustee believes that Healthclaim Recovery was specifically formed to facilitate Defendants' efforts to reduce the size of the claims pool in the Debtors' bankruptcy proceedings in the hopes that, if the Recovery Cap Motion is granted, Defendants could avoid the consequences of their fraudulent conduct. This litigation tactic should not be permitted. *See In re Beugen*, 1991 WL 54864 at *7 (9th Cir. 1991) ("The right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict

---

[4] The members of Healthclaim Recovery include: Capital Investors IV, L.P., The Northwestern Mutual Life Insurance Company, Apollo Investment Corporation, and Ares Capital Corporation. [D.I. 146, fn 1].

further punishment and discomfort upon the debtor."); *In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34, 38 (Bankr. D.N.J. 1996) (acknowledging assignee who acquires a claim for an improper purpose should not be allowed to steps into the shoes of the assignor); *In re Scheffer*, 450 B.R. 271, 275 (Bankr. D. Mass. 2011), *aff'd*, No. CIV.A. 4:11-40130, 2012 WL 160074 (D. Mass. Jan. 17, 2012) ("[A]n individual may not purchase a claim for the purpose of objecting to discharge or otherwise to impede the proper administration of a bankruptcy case.").

33.  On November 1, 2019, Healthclaim Recovery filed its Notice of Transfer of Claim ("Notice of Transfer") demonstrating that it been assigned Claim No. 1 in the amount of $48,676.31. [D.I. 134].

34.  On November 27, 2019, Healthclaim Recovery (which in actuality, is Defendants) filed its Objection to MPT's Proof of Claim No. 15-1 (the "MPT Claim Objection"). [D.I. 143, 151].

35.  On November 27, 2019, Healthclaim Recovery filed its Objection to Tennessee Bankruptcy Trustee's Proof of Claim No. 16-2 (the "Tennessee Trustee Claim Objection," and with the MPT Claim Objection, the "Claim Objections"). [D.I. 146].

36.  Healthclaim Recovery, whose members are Defendants in the Adversary Proceeding and who defrauded the estate, purchased a $48,000 claim in order to commence a claims objection process, the cost of which will far exceed the amount of the claim they purchased.

**RELIEF REQUESTED**

37.  By this Motion, the Trustee seeks an order staying the Claim Objections until such time that the Trustee commences the claims review process in the ordinary course of the administration of the estate. *See* HANDBOOK FOR CHAPTER 7 TRUSTEES, U.S. Department of Justice, p. 4-26, Section F(1) ("The claims review process commences *after* the trustee is certain

that there will be a distribution to creditors and as soon as possible following the expiration of the bar date for filing claims.") (emphasis added).

## BASIS FOR RELIEF

### A.    The Claims Objections are Premature

38.    Section 704(a)(5) of the Bankruptcy Code requires a trustee to examine proofs of claim and object to the allowance of any claim that is improper, if a purpose would be served by doing so.  *See* 11 U.S. Code § 704 (a)(5).

39.    "**The claims review process commences *after* the trustee is certain that there will be a distribution to creditors** and as soon as possible following the expiration of the bar date for filing claims."  *See* HANDBOOK FOR CHAPTER 7 TRUSTEES, U.S. Department of Justice, p. 4-26, Section F(1) (emphasis added).

40.    Here, the Trustee is not certain that there will be a distribution to creditors because the Adversary Proceeding has not concluded.  *See In re Magnesium Corp. of Am.*, 583 B.R. 637, 650 (Bankr. S.D.N.Y. 2018) (finding equity holder of debtor lacked standing "to object to claims against the estate unless there is a reasonable possibility of a surplus after all claims against the debtor's estate are paid in full"); *see also In re Tronox Inc.,* 464 B.R. 606, 617 (Bankr. S.D.N.Y. 2012) (finding no support for requiring determination of creditors' claims prior to resolving avoidance actions).

41.    Thus, while Healthclaim Recovery (Defendants) raises a number of objections to both MPT's claim and the Tennessee Bankruptcy Trustee's claim, it is premature to engage in the claims review process at this time, especially in light of the fact that the claims process itself could trigger contested proceedings taking some time to resolve.

42. By asserting the Claim Objections now, Healthclaim Recovery (Defendants) is gaming the bankruptcy process in an obvious attempt to try to minimize their exposure from their fraudulent conduct.

### B.  The Trustee Has Acted Properly And Is Not Conflicted.

43. Healthclaim Recovery (Defendants) use their Claim Objections as an attempt to discredit the Trustee. To do so, Healthclaim Recovery impugns the Trustee for interacting with creditors who were the express targets of Defendants' fraud, implying that the Trustee has wrongfully solicited the filing of claims to increase his potential commission. [D.I. 146, at ¶101; D.I. 151, at ¶¶ 29-31]. Obviously, if left to Healthclaim Recovery / the Defendants, these creditors would remain the victims of Defendants' fraud and never recover the sums to which they are entitled.

44. It is the statutory duty of the Trustee to "investigate the financial affairs of the debtor" and to "collect and reduce to money the property of the estate." 11 U.S.C. § 704. In that role, the Trustee "has a fiduciary relationship with all creditors of the estate" and "the duty to maximize the value of the estate." *See, e.g., In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996).

45. Indeed, to assure honesty and fairness in the process, Rule 3004 of the Federal Rules of Bankruptcy Procedure expressly authorizes a Trustee to file claims on a creditor's behalf. *See also* 11 U.S.C. § 501(c). Healthclaim Recovery seemingly suggests that a Chapter 7 trustee who has discovered a fraud perpetrated by the Debtors' former officers, directors, controlling shareholders and insider creditors should not do everything he can to right that wrong.

46. Here, the Trustee has shined a light on Defendants' fraud whereby they stripped the Debtor of its valuable business and left it as an insolvent shell.[5] Now, the Trustee properly seeks

---

[5] Upon information and belief, the Tennessee Bankruptcy Trustee lacked the resources to conduct her own investigation and terminated the Tennessee Bankruptcy Case without having done so. [D.I. 205, p. 61 fn 31].

to avoid the fraudulent transfer and recover for the benefit of all legitimate creditors, not just the small number identified in the fraudulent schedules submitted by former management as part of their unlawful scheme.

47. Healthclaim Recovery further impugns the Trustee by suggesting he is conflicted with respect to MPT and Tennessee Bankruptcy Trustee's claims because the Trustee "has made clear that he has *already* decided not to object." [D.I. 146, at ¶¶ 98-107; D.I. 151, at ¶¶ 66-73].

48. Healthclaim Recovery misconstrues the Trustee's position. The Trustee **has not** made any determinations with respect to the value of the claims filed by MPT and Tennessee Bankruptcy Trustee. In fact, the Trustee has not yet made a decision as to the merits of any of the proofs of claim filed in this bankruptcy proceeding and believes further investigation and analysis of the claims could be needed *if* there will be a distribution to creditors.

49. Instead, the Trustee has determined that MPT and Bucks County Hospital are legitimate creditors because they are also victims of Defendants' fraud and as creditors, their claims should be properly considered in the ordinary course.

50. The Claims Objections should be stayed and the Court should not waste its limited judicial resources or require the Trustee to waste limited estate resources evaluating these claims or responding to the Claims Objections when the Trustee is not able to determine, at this time, if there will be any distribution to creditors.

## RESERVATION OF RIGHTS

51. The Trustee reserves the right to supplement this Objection at or before any hearing addressing claims asserted in this bankruptcy.

**NOTICE**

52. Notice of this Motion has been given to the Debtors, counsel for the Debtors, the Office of the United States Trustee, and all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee submits that no further notice is required. The Trustee further requests that the Court determine the notice is adequate and proper.

WHEREFORE, the Trustee respectfully requests entry of an order (i) staying the Claim Objections until such time that the Trustee commences that claims review process in the ordinary course of the administration of the estate, and (ii) granting the Trustee such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOX ROTHSCHILD LLP
By: ___*/s/ Seth A. Niederman*___
    Seth A. Niederman (No. 4588)
    919 North Market Street, Suite 300
    Wilmington, DE  19801-2323
    (302) 654-7444/Fax (302) 656-8920
    sniederman@foxrothschild.com
        -and-

Michael G. Menkowitz
William H. Stassen
2000 Market Street, Twentieth Floor
Philadelphia, PA  19103-3222
(215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
wstassen@foxrothschild.com

Attorneys for Alfred T. Giuliano, Chapter 7 Trustee for the estate of DSI Renal Holdings, LLC, *et al.*

Dated: January 9, 2020