## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>DSI RENAL HOLDINGS, LLC, <u>et al.</u>,<br><br>Debtors. | Chapter 7<br><br>Case No. 11-11722 (KBO)<br><br>Jointly Administered<br><br>**Objections Due: Jan. 30, 2020 at 4:00 p.m.**<br>**Hearing Date: Feb. 25, 2020, at 10:00 a.m.**<br><br>**Ref. No. 143** |

### MOTION OF MPT OF BUCKS COUNTY, L.P. TO CONTINUE FINAL HEARING ON OBJECTION OF HEALTHCLAIM RECOVERY LLC TO PROOF OF CLAIM NO. 15-1 FILED BY MPT OF BUCKS COUNTY, L.P.

MPT of Bucks County, L.P. ("MPT") hereby moves (the "Motion") to continue any final hearing on the *Objection of Healthclaim Recovery LLC to Proof of Claim No. 15-1 filed by MPT of Bucks County, L.P.* (the "Objection")[1].  As grounds for this Motion, MPT states as follows:

### JURISDICTION AND VENUE

1.     On June 3, 2011 (the "Petition Date"), DSI Renal Holdings LLC ("DSI Renal Holdings"), DSI Hospitals, Inc. ("DSI Hospitals"), and DSI Facility Development, LLC ("DSI Facility," and together with DSI Renal Holdings and DSI Hospitals, the "Debtors") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in this Court.  The bankruptcy cases are jointly administered by order of this Court dated July

---

[1] D.I. 143.  Healthclaim Recovery LLC and MPT have agreed to the filing of this Motion to first address the procedural aspects of whether the claim objection should proceed at all, before MPT is asked to respond to the merits of the claim objection.

27, 2011, under the caption *In re DSI Renal Holdings, LLC, et al*, Case No. 11-11722 (KJC) (collectively, the "Bankruptcy Case").[2]

2.      This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the District Court* dated February 29, 2012.  This a core proceeding under 28 U.S.C. § 157(b)(2).

### THE PARTIES

3.      The objector, Healthclaim Recovery LLC (the "Objector"), is a Delaware limited liability company formed on June 10, 2019. The members of the Objector are Centre Capital Investors IV, L.P. ("Centre Capital"), The Northwestern Mutual Insurance Company ("Northwestern"), Ares Capital Corporation ("Ares"), and Apollo Investment Corporation ("Apollo" and together with Centre Capital, Northwestern and Ares, the "Objector Defendants").[3]  All of the members of the Objectors are Defendants (hereinafter defined) in an Adversary Proceeding captioned *Giuliano v. Schnabel, et al.,* Adversary Proceeding No. 14-50356 (the "Adversary Proceeding"). In the Adversary Proceeding, the Chapter 7 Trustee for the Debtors seeks, among other things, to recover in excess of $425 million in alleged fraudulent transfers.

4.      Pursuant to the *Notice of Transfer of Claim Other Than For Security Pursuant to Fed. R. Bankr. P. 3001(e)(2)*, Office Depot, Inc. ("Office Depot") sold,

---

[2] D.I. 25.

[3] D.I. 143, n. 1.

transferred and assigned Claim No. 1 in the amount of $48,676.31 (the "Office Depot Claim") to the Objector.[4]

5.      The claimant, MPT, is an affiliate of Medical Properties Trust, Inc., a publicly-traded REIT based in Birmingham, Alabama.  Prior to the Petition Date, MPT was a party to that certain sale/lease-back transaction whereby MPT financed the construction of the Bucks County Hospital located in Bethlehem, Pennsylvania in exchange for rental payments from the hospital. All of the obligations of the Buck County Hospital to MPT were guaranteed by DSI Holding Company, Inc. ("DSI Holding"), the Debtors' parent prior to the Petition Date.

## PRELIMINARY STATEMENT

6.      As the sole ground for the Objection, the Objector maintains that MPT released all of its claims against DSI Holding in a prepetition settlement agreement (the "Defense").[5]

7.      MPT avers that the final hearing on the Objection should be continued based upon the following grounds:

(a)      The Defense is property of the Debtors' Bankruptcy Estate and, as a result, the Chapter 7 Trustee is the exclusive party with standing to assert it.

(b)      Neither Office Depot nor the Objector are parties to or intended third-party beneficiaries of the Defense and, therefore, the Objector lacks standing under Delaware law to enforce its provisions or assert any defenses arising therefrom.

---

[4] D.I. 134.

[5] D.I. 143, ¶ 1

11463776/2

(c)     The Trustee is the primary representative of the Debtors' Bankruptcy Estates and is better suited than the Objector to determine both when and whether to pursue claim objections.

(d)     The Objection is premature and should not be ruled on prior to the conclusion of the Adversary Proceeding.

8.      Further, MPT joins in the *Motion of Eva Lemeth, Chapter 7 Trustee for Bucks County Oncoplastic Institute LLC, to Continue Claim Objection of Healthclaim Recovery* LLC to Claim 16 and incorporates the arguments set forth therein filed of even date herewith.

9.      MPT reserves its rights right to amend this Response to assert additional affirmative defenses (including, but not limited, the doctrine of unclean hands).

## FACTUAL BACKGROUND

### A.      The Debtors

10.     The Debtors "are the empty shells of a healthcare conglomerate that once comprised more than twenty-five companies."[6] On the Petition Date, DSI Renal Holdings and DSI Facility were Delaware limited liability companies, and DSI Hospitals was a Delaware corporation. The Debtors' parent, DSI Holding, was a Delaware corporation that merged into DSI Renal Holdings during a restructuring in 2010, with DSI Renal Holdings as the surviving company (the "Restructuring").[7]

---

[6] *In re DSI Rental Holdings, LLC*, 574 B.R. 446, 455 (Bankr. D. Del. 2017)(all citations to the Complaint (hereinafter defined) and other docket items in the Memorandum Opinion are omitted throughout this Reply).

[7] *Id.*

4

11.     Prior to the Petition Date, "DSI Holding", through its 100% ownership of DSI Renal Holdings, DSI Renal, Inc. ("DSI Renal"), and its operating subsidiaries, was the fifth-largest provider of outpatient dialysis clinics in the United States, owning and operating 106 clinics and providing services to twenty-six acute care facilities (the "Renal Business"). As of October 31, 2009, the Debtors' clinics treated approximately 7,800 patients in twenty-three states and generated annual revenues of approximately $350 million."[8]

## B.     Bucks County Hospital and The Tennessee Bankruptcy Case

12.     "Debtor DSI Hospitals (a subsidiary of DSI Holding) owned a breast cancer treatment hospital in Bensalem, Pennsylvania, the Bucks County Oncoplastic Institute, LLC (the "Bucks County Hospital")."[9] DSI Holding guaranteed between $7–9 million of claims owing to creditors of the Bucks County Hospital, including MPT.[10]

13.     The Bucks County Hospital was not profitable and incurred tens of millions of dollars of losses.  In order "to avoid DSI Holding['s] liability for the debts of the Bucks County Hospital, [DSI Holding's] management [and] directors caused the Bucks County Hospital to commence a Chapter 7 bankruptcy case," on March 30, 2009,  in the Bankruptcy Court for the Middle District of Tennessee (the "Tennessee Bankruptcy

---

[8]*Id*. at 456.

[9]*Id.*

[10]*Id.*

11463776/2

Court") captioned *In re Bucks County Oncoplastic Institute, LLC*, Case No. 09-03570-MH3-7 (the "Tennessee Bankruptcy Case").[11]

14.     "The Bucks County Hospital's schedules showed debts in excess of $36 million owed to more than 200 creditors."[12] The trustee in the Tennessee Bankruptcy Case (the "Tennessee Trustee") distributed about $215,000 to about forty creditors on account of the scheduled claims.[13]

15.     DSI Holding's status as a co-debtor for the Bucks County Hospital was omitted from the Bucks County Hospital's schedules. The Tennessee Bankruptcy Case later closed without DSI Holding's status as co-debtor being revealed.[14]

16.     As a result of the allegations contained in the Complaint (hereinafter defined), on or about January 11, 2013, Tennessee Trustee filed a motion to reopen the Tennessee Bankruptcy Case. "On February 6, 2013, the Tennessee Bankruptcy Court granted the motion and reopened the Tennessee Bankruptcy Case."[15]

**C.    The Adversary Proceeding**

17.     On May 20, 2013, Alfred T. Giuliano, as chapter 7 trustee (the "Trustee") for the jointly administered chapter 7 estates of the Debtors (collectively, the "Bankruptcy Estate"), filed a complaint (the "Complaint") in the United States District Court for the

---

[11]*Id.*

[12]*Id.*

[13]*Id.* at 457.

[14]*Id.*

[15]*Id.*

Eastern District of Pennsylvania (the "Pennsylvania District Court")[16] against Apollo, Ares, Northwestern, the Centre Defendants,[17] the Director and Officer Defendants[18] (the "D & O Defendants" and together with the Apollo, Ares, Northwestern, and the Centre Defendants, the "Defendants").In the Complaint, the Trustee sought, among other things, to recover in excess of $425 million in alleged fraudulent transfers.[19]

18.    "The crux of the Trustee's Complaint is that the Defendants orchestrated a restructuring of the DSI entities [*i.e.* the Restructuring] through a complex series of agreements, transfers and transactions that, ultimately, stripped DSI Renal Holdings (formerly DSI Holding) of its assets by diluting its 100% ownership of the operating subsidiaries to less than one-thousandth of a percent of an interest (*i.e.*, 1 share of a total of 138,154.275 shares) in the post-restructuring entity."[20] As a result of the Restructuring, the Trustee alleges that "the Debtors were left as insolvent shells, with liabilities in excess of $40 million and assets as little as $300,000."[21]

---

[16]*Id*. at 453.

[17] The Centre Defendants are: Centre Partners Management LLC, Centre Bregal Partners, L.P., Centre Bregal Partners II, L.P., Centre Capital Investors IV, L.P., Centre Capital Investors V, L.P., Centre Capital Non–Qualified Investors IV, L.P., Centre Capital Non–Qualified Investors V, L.P., Centre Partners Coinvestment IV, L.P., Centre Partners Coinvestment V, L.P., Centre Partners IV L.P., Centre Partners IV, LLC, Centre Partners V, L.P., and Centre Partners V, LLC.

[18] The D & O Defendants are: Michael Schnabel, Leif Murphy, Bruce Pollack, Robert Bergmann, and Jay Yalowitz. All claims against director Ken Kencel were dismissed without prejudice on November 1, 2013.

[19]*Id*. at 454.

[20]*Id*. at 455-56.

[21]*Id*.

7

19.    Further, the Trustee avers that when the Renal Business was sold in February 2011 for more than $700 million (the "DaVita Merger Transaction") to DaVita, Inc. ("DaVita"), "the Debtors remained insolvent, while the Defendants shared sale proceeds of more than $425 million."[22]

20.    Additionally, the Trustee alleges that the filing of the Tennessee Bankruptcy Case was part of the Defendants' overall scheme to defraud creditors. Specifically, the Trustee avers that company insiders intentionally filed materially false schedules in that case to escape liability for guarantees made to the hospital's creditors.[23] The Trustee maintains that "company insiders did not disclose DSI Holding's codebtor status to diminish the likelihood that the Bucks County Hospital's creditors would commence litigation or take other action, such as filing an involuntary bankruptcy proceeding, against DSI Holding, which would have "torpedoed" the Defendants' scheme to strip out the Renal Business." [24]

21.    In addition to the guarantees, the Trustee argues, under an alter ego theory, that DSI Holding was responsible for the claims of all of the Buck's County Hospital's creditors, because the parent routinely ignored corporate boundaries and issued purchase orders to vendors, paid bills, controlled hospital personnel, and commingled funds (along with those of other affiliates).[25]

---

[22]*Id*. at 456.

[23]*Id*.

[24]*Id*. at 457.

[25]*Id*. at 466.

8

22.     On August 5, 2013, the Defendants filed motions to dismiss the Complaint for failure to state a claim and, with regard to Count 8, lack of subject matter jurisdiction (collectively, the "Motions to Dismiss"),[26] and motions to dismiss for improper venue or, in the alternative, to transfer the action to the United States District Court for the District of Delaware (the "Delaware District Court") for referral to this Court (the "Improper Venue Motions").

23.     On March 17, 2014, the Pennsylvania District Court entered an order transferring the case to the Delaware District Court.[27]  The Delaware District Court then referred the case to this Court, commencing the Adversary Proceeding.[28]

24.     On July 20, 2017, U.S. Bankruptcy Judge Kevin J. Carey ("Judge Carey") entered a Memorandum Opinion (the "Memorandum Opinion") and Order whereby the Motions to Dismiss were denied in part, granted in part, and deferred in part.[29]

25.     In the Motions to Dismiss, the Defendants argued, among other things, that any claim filed by the Trustee on behalf of creditors, such as the Bucks County Hospital creditors, would be untimely under Fed. R. Bankr. P. 3004. In regard to this argument, Judge Carey stated that "*at this stage in the proceeding, I cannot determine whether facts may develop that would allow tardy filing of claims*." (emphasis added).[30]

---

[26]*Id*. at 454.

[27]*Id*.

[28]*Id*.

[29]AP D.I.s 56 and 57; *In re DSI Rental Holdings, LLC*, 574 B.R. 446, 455 (Bankr. D. Del. 2017).

[30]*Id*. at 479.

26.     Subsequently, the Defendants filed Motions for Summary Judgment, or Partial Summary Judgment (collectively, the "Summary Judgment Motions").[31]

27.     On September 13, 2019, the Court held hearings on certain of the Motions for Summary Judgment relating to (i) the fraudulent transfer claims under 11 U.S.C. § 546(e), (ii) the exclusion of debt repayments from the potential recovery, (iii) the limitation (cap) of any recoveries to the amount necessary to satisfy allowed creditor claims, and (iv) the exclusion of non-debtor property from the potential recovery.[32]

28.     The Summary Judgment Motions are currently pending before the Court.

**D.     The Claim**

29.     On May 31, 2013, MPT filed the Claim in the Bankruptcy Case in the amount of $10,400,787.98 for "breach of contract, fraud and guarantees."[33]

30.     The Claim contains a detailed Attachment in support thereof.[34]  In sum, the Attachment sets forth the following facts in support of the Claim:

- On November 19, 2009, MPT commenced an action (the "Action") by filing a complaint (the "MPT Complaint") against DSI Holding, DSI Facility, Centre Bregal Partners, LP, Jerome S. Tannenbaum, and M. Stephen Harrison (collectively, the "Superior Court Defendants") in the Superior Court of the State of Delaware in and for New Castle County (the "Superior Court") seeking to recover damages resulting from a fraud perpetrated by the Superior Court Defendants though which they persuaded MPT to (i) release a $6.275 million guaranty (the "First Guaranty") in favor of a new guaranty by DSI Holdings (the "Second Guaranty" and together with the First Guaranty, the "Guarantees") upon

---

[31] AP D.I.s 174, 175, 177, 178, 179, 180, 181, 182, 184, 185, 186, 188, 189, 190, 191, 192, 193, 195.

[32] AP D.I.s 174, 184, 188 and 191.

[33] Claim No. 15–1.

[34] *Id.*

which DSI Holding ultimately defaulted, and (ii) increase in its funding commitment in connection with the construction of the Bucks County Hospital from $38 million to $45 million.

- In the MPT Complaint, MPT sought judgment against the Superior Court Defendants as follows: (i) $3.8 million compensatory damages against DSI Holdings/DSI Renal relating to that certain Second Guaranty; (ii) damages totaling $10,332,883 against the Superior Court Defendants relating to that certain First Guaranty; (iii) damages totaling $4,057,883 against the Superior Court Defendants relating to a construction overage funding; (iv) punitive damages against the Superior Court Defendants; (v) compensatory damages against DSI Facility in the amount of the construction overages; (vi) pre- and post-judgment interest; and (vii) fees and costs.

- On September 13, 2010, MPT, DSI Holding and DSI Renal Holdings stipulated to the entry of an Order of Judgment (the "<u>Judgment</u>") against DSI Holding and DSI Renal Holdings in the amount of $3.8 million, plus pre-judgment interest in the amount of $331,489.27, post-judgment interest at the rate of 5.75% and costs in the amount of $322.50.

- On October 13, 2010, MPT filed its First Amended Complaint (the "<u>Amended MPT Complaint</u>") naming DSI Renal Holdings as a party.

- In aid of the execution of the Judgment, on or about October 19, 2010, MPT propounded discovery requests to DSI Holding and DSI Renal Holdings. Thereafter, MPT, DSI Holding and DSI Renal Holdings commenced settlement discussions (the "<u>Settlement Discussions</u>"). Throughout the Settlement Discussions, DSI representatives, including their attorneys, represented that the Restructuring was based upon a valuation of approximately $475 million, all the while intentionally withholding the fact from MPT that the Debtors were about to close a sale for nearly $700 million what would net equity of nearly $300 million.

- Based upon the fraudulent misrepresentations, MPT entered into a settlement agreement with the Superior Court Defendants (the "<u>Settlement Agreement</u>"). The Settlement Agreement contained a "general" release of the Defendants (the "<u>Release</u>").

- Thereafter, MPT received the settlement payment of $1.4 million.

- On February 4, 2011, <u>just seven days</u> after the execution of the Settlement Agreement, Debtor DSI Renal Holdings and DaVita entered into the DaVita Merger Transaction.

11

- On February 9, 2011, a satisfaction of the Judgment was noted on the Superior Court docket.

- Finally, on February 17, 2011, the Superior Court entered an Order dismissing the MPT Case with prejudice.

- Less than four months later, the Debtors filed the Bankruptcy Case and the Trustee was appointed.

- Originally, the Bankruptcy Case was a "no asset" case.  However, unbeknownst to MPT, on July 26, 2011, the Court issued a notice indicating that assets might be available to satisfy certain claims against the Debtors (the "Notice"). The Notice set a deadline for filing proofs of claim of October 26, 2011 (the "Bar Date").

- MPT did not receive notice of the Bankruptcy Case, was not listed on the Debtors' schedules and had no notice of the Bar Date. Consequently, MPT did not file a proof of claim.

- In early October, 2012, MPT's counsel was contacted by counsel for the Trustee who informed MPT that the Trustee had uncovered credible evidence of the Debtors' actual intent to hinder, delay, and defraud MPT during the Action, the Settlement Discussions, execution of the Settlement Agreement and procurement of the Release. In particular, it appeared to the Trustee that DSI Holding had fraudulently transferred its assets during the Restructuring for the specific purpose of defrauding MPT and avoiding its obligations to MPT under the Second Guaranty.

- Based upon this evidence, the Trustee indicated that he would not raise the Settlement Agreement and Release contained therein as a defense to the Claim.  He did not state that he would not object to the Claim on other grounds.

31.    MPT filed the Claim against the Debtor DSI Renal Holdings for amounts sought in the Amended MPT Complaint ($10,332,883) plus pre-judgment interest at a rate of 5.5% per annum in the amount of $1,328,129.34, punitive damages in an amount to be determined, attorney fees and expenses in the amount of $139,453.14 and costs in the amount of $322.50 less $1.4 million paid to settle the Action for a total of $10,400,787.98.[35]

---

[35] *Id.*

32.     The Claim was filed without prejudice to or waiver of any other rights, remedies, and interests of and to MPT.  Further, MPT reserved the right to amend the Claim at any time.[36]

## ARGUMENT

33.     This Motion should be granted and the final hearing on the Objection should be continued based upon the following grounds.

**A.     The Defense to the Claim is Property of the Bankruptcy Estate and, Therefore, the Trustee is the Exclusive Party with Standing to Assert it.**

34.     As the sole ground for the disallowance of the Claim, the Objector asserts that the Claim should be disallowed allowed for the "simple reason" that MPT released all of its claims against the Debtor [Renal Holdings] in the [Settlement Agreement]."[37]  As set forth herein, the Objector is not the proper party, with standing, to assert the Release as a defense to the Claim. Rather, the Release and any and all claims, counterclaims or defenses arising therefrom or relating thereto are property of the Bankruptcy Estate. As a consequence, only the Trustee has standing to assert the Release as a defense to the Claim.[38]

35.     Upon the commencement of the Bankruptcy Case, the Bankruptcy Estate was created. "Bankruptcy Code § 541(a) provides that a bankruptcy estate consists of all legal and equitable interests of the debtor in property as of the commencement of the case.

---

[36]Claim No. 15-1.

[37] D.I. 143, ¶ 1.

[38] MPT does not dispute that the Objector has standing to object to proofs of claim under section 502(a) of the Bankruptcy Code but rather the Objector lacks standing to assert the Defense because it is property of the Bankruptcy Estate.

This includes causes of action existing at the time the bankruptcy action commences." *DSI Renal Holdings,* 574 B.R. at 479 (citations and internal punctuation omitted). *See also In re Student Fin. Corp.*, 335 B.R. 539, 546-47 (D. Del. 2005) ("The estate of a bankrupt debtor includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 11 U.S.C. § 541(a)(1). This definition includes legal causes of action."); *In re Elrod Holdings Corp.*, 392 B.R. 110, 114 (Bankr. D. Del. 2008) (same).

36.     The chapter 7 trustee is the successor-in-interest to all legal or equitable interests of the debtor in property, including causes of action and defenses held by the debtor. *In re WorldSpace, Inc.*, Civ. No. 15-25, 2016 WL 5339056, at *8-9 (D. Del. Sept. 22, 2016); *Gajiu v. Ehrenberg* (*In re Goldshtadt*), BAP No. CC-18-1333, 2019 WL 4200802, at *5 (BAP 9th Cir. Sept. 4, 2019) ("a bankruptcy trustee succeeds to a debtor's interests in estate property, including legal claims and defenses . . . ."); *In re Crim v. First Tenn. Bank Nat. Ass'n*, No. 3:09-cv-0343, 2009 WL 3615083, at *2-3 (M.D. Tenn. Oct. 28, 2009) (recoupment defense is property of the estate which the chapter 7 trustee had the authority to administer and settle.); *In re Moisu*c, No. 15-3799, 2017 WL 2633428, at *2 (E.D. Penn. Jun. 19, 2017) ("Upon the Chapter 7 filing, the Debtor's forgery claims (and all of the other defenses . . . became property of the Chapter 7 estate, by operation of 11 U.S.C. § 541."); and *In re Sims*, No. 08-41668, 2009 WL 4255555, at *5 (Bankr. D. Kan. Nov. 25, 2009) ("The Court finds that Defendant does lack standing to proceed with these counterclaims. Under 11 U.S.C. § 541(a)(1), the bankruptcy estate includes, except as otherwise provided, all legal or equitable interests of the debtor in property as of the commencement of the case. This definition includes causes of action belonging to the debtor at the commencement of the bankruptcy case.") (citation and quotations omitted).

14

37.     Bankruptcy Code section 323(a) "provides that the trustee is the sole representative of [the] estate and 11 U.S.C. § 323(b) of the Code provides that the trustee has the capacity to sue and be sued. ... Taken together, § 323(a) and (b) grant the trustee the exclusive standing to assert causes of action that have become property of the estate by operation of § 541." *Elrod Holdings,* 392 B.R. at 114 (citing *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989)). *See also WorldSpace, Inc*., 2016 WL 5339056, at *8-9 ("Trustee was the sole party with authority to bring the estate cause of action for breach of fiduciary duty, absent permission from the Bankruptcy Court.").

38.     Furthermore, under Bankruptcy Code section 558, a trustee has the benefit of all defenses that are available to a debtor. 11 U.S.C. § 558 and *In re PSA, Inc.,* 277 B.R. 51 (Bankr. D. Del. 2002). A trustee is not limited to affirmatively asserting the estate's rights under a defense but can also agree to waive such defenses. *In re Martin*, 490 F.3d 1272, 1277 (11th Cir. 2007) (approving settlement agreement between chapter 7 trustee and creditor asserting prepetition cause of action against debtor and preventing debtor from subsequently relitigating defenses waived by trustee in entering into settlement).

39.     It has long been held in the Third Circuit that once a company or individual files for bankruptcy, creditors lack standing to assert claims that are property of the estate. *In re Emoral, Inc*., 740 F.3d 875, 879 (3d Cir. 2014); *Elrod Holdings*, 392 B.R. at 114; *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc*., 296 F.3d 164, 169 (3d Cir. 2002); *In re PHP Healthcare Corp*., 128 Fed. App'x. 839, 844–45 (3d Cir. 2005) (stating that "an individual creditor of a debtor may not assert a general claim belonging to all creditors"). *See also In re Our Alchemy, LLC*, Case No. 16-11596, AP No. 17-50477, 2017 WL 3037445, at *3 (Bankr. D. Del. Jul. 17, 2017) ("In the Third Circuit, individual

15

creditors may not assert general claims because they belong to all creditors."); and *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 613 (D. Del. 2018) ("After a company files for bankruptcy, creditors lack standing to assert claims that are property of the [bankruptcy] estate. . . .").

40.     The Third Circuit and courts within it have recognized that permitting the chapter 7 trustee alone to pursue the estate's cause of action promotes the orderly distribution of assets in bankruptcy and comports with the fundamental bankruptcy policy of equitable distribution to all creditors. *See Emoral*, 740 F.3d at 879; *Harrison*, 320 F. Supp. 3d at 613; and *WorldSpace,* 2016 WL 5339056, at *8-9.  *See also In re Flying Star Cafes, Inc.*, 568 B.R. 129, 134-35 (Bankr. D.N.M. 2017) ("The right to pursue claims that benefit creditors generally is reserved for the estate representative. This rule is intended to promote the orderly and equitable administration of a bankrupt's estate by preventing individual creditors from pursuing separate actions to the detriment of other creditors and of the estate as a whole.") (citations and internal punctuation omitted)).

41.     In accordance with section 541 of the Bankruptcy Code and well settled Third Circuit law, all of the Debtors' assets as of the Petition Date, including any causes of action, counterclaims or defenses related to the Settlement Agreement and Release, became property of the Bankruptcy Estate and are subject to the exclusive control of the Trustee. Hence, the Trustee is the only party with standing to assert the Defense.

**B.      Additionally, Neither Office Depot nor the Objector Are Parties or Intended Third-Party Beneficiaries to the Settlement Agreement and, Therefore, the Objector Lacks Standing Under Delaware State Law to Enforce its Provisions.**

16

42.     In the Objection, the Objector maintains that MPT contractually waived any fraud claims in the Settlement Agreement.[39] However, neither Office Depot nor the Objector were parties to the Settlement Agreement nor were either of them intended third-party beneficiaries to the Settlement Agreement. Therefore, under Delaware state law, the Objector does not have standing to enforce the Settlement Agreement's provisions or raise any defenses relating thereto.

43.     "As a general rule, a nonparty to a contract has *no* legal right to enforce it." *Comrie v. Enterasys Networks, Inc*., No. Civ.A. 19254, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004) (emphasis added). *"*Under Delaware contract law, a nonparty to a contract generally has no rights relating to it unless he or she is a third-party beneficiary to the contract." *BAC Homes Loans Serv., LP v. Albertson*, No. K10L-11-105, 2014 WL 637659, at *3 (Del. Super. Ct. Feb. 10, 2014). *See also Amirsaleh v. Bd. of Trade City of N.Y., Inc.,* No. 2822-CC, 2008 WL 4182998, at *4 (Del. Ch. Sept. 11, 2008) ("Generally, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions.") (citation and quotations omitted).

44.     "In order to qualify as a third-party beneficiary, a party must be an *intended* beneficiary. If a third-party happens to benefit from the performance of the contract indirectly, the third person has no rights under the contract." *Albertson*, 2014 WL 637659, at *3 (emphasis added). *See also Comrie v. Enterasys Networks, Inc*., No. Civ.A. 19254, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004) (*"*To qualify as a third party beneficiary of a contract, [] the contracting parties must have intended that the third party beneficiary

_____

[39]D.I. 143, ¶ 39.

17

benefit from the contract . . . ."); and *Madison Realty Partners 7, LLC v. AG ISA, LLC*, No. CIV.A. 18094, 2001 WL 406268, at \*5 (Del. Ch. Apr. 17, 2001) (same). Neither Office Depot nor the Objector, as its transferee, were intended third-party beneficiaries of the Settlement Agreement.

45.    Because neither Office Depot nor the Objector were parties to the Settlement Agreement or intended third-party beneficiaries, the Objector does not have standing to enforce its provisions or assert any defenses arising therefrom. *U.S. Acquisition Prop. XIV, LLC v. Reserves Dev. Corp.*, No. S10C–06–034–ESB, 2012 WL 1415717, at \*4 (Del. Super. Ct. Feb. 23, 2012)("Since Reserves and Korotki were not parties to the Letters of Credit or beneficiaries of them, they have no standing to raise any defenses regarding WTC's payments under the Letters of Credit to the Sussex County Council."); and *Amirsaleh*, 2008 WL 4182998, at \*4 ("Amirsaleh's claims sound in contract, and, therefore, to have standing he must have been a party to the Merger Agreement or an intended third-party beneficiary.").

**C.    The Trustee is the Primary Representative of the Bankruptcy Estate and is Better Suited than the Objector to Determine When and Whether to Pursue Claim Objections.**

46.    MPT does not dispute that, as the transferee of the Office Depot Claim, the Objector is a "party in interest" with standing to object to other creditors' claims. Although the Objector has the right to object to other creditors' claims, that right is not unfettered. *In re Magnesium Corp. of Am.*, 583 B.R. 637, 653 (Bankr. S.D.N.Y. 2018) ("the right of one creditor to object to another creditor's claim is not absolute and is subject to judicial limitation.") (citation omitted). "[Section] 502(a) of the Bankruptcy Code is designed to

maximize the estate for the benefit of all general creditors; *it is not designed to enable a lone creditor to act solely in his own self-interest*." *Id.* at 655 (emphasis added).

47.    While individual creditors have the right to file claim objections, courts have emphasized that "it is the Trustee who is the primary representative of the estate and who has the authority to take action on behalf of the estate. *That primary authority includes the right, on behalf of the estate, to settle any claims that are made against the estate, which include the claims by [individual creditors].*" *In re Futterman*, No. 17-12899, 2019 WL 2553614, at *3 (Bankr. S.D.N.Y. Jun. 20, 2019) (emphasis added).

48.    The courts have also recognized that creditors may file claim objections for improper purposes and abuse the privilege. *In re DVR, LLC*, 582 B.R. 507, 520 (Bankr. D. Col. 2018), *aff'd*, 606 B.R. 80 (D. Col. 2019), *appeal filed*, No. 19-1360 (10th Cir. 2019).[40] As a consequence, the courts have determined that the chapter 7 trustee (charged with the fiduciary duty to administer the estate in the best interests of *all* creditors) is better suited than an individual creditor to judge whether to pursue claims objections. With this in mind, the courts have reasoned that

> Simply allowing a creditor—a non-statutory fiduciary—to go forward in the Chapter 7 trustee's stead could facilitate a creditor "hijacking" a Chapter 7 bankruptcy case in a manner that Congress did not envision. . . . . An experienced bankruptcy trustee, unlike a potentially angry and out-for-justice creditor, may have a better instinct for what is worth chasing and what is worth foregoing.

---

[40]The *DVR* court noted that the facts in that case demonstrated how a particular objector may be pursuing an objection based on an interest that conflicts with the interests of the estate as a whole finding that: "Hamon may be motivated solely by his belief that New Lake's claim has no validity. On the other hand, he may be motivated in part by his need to prevent New Lake from suing him as a co-maker of the FNB Note. The Trustees do not suffer from this conflict of interest." *DVR*, 582 B.R. at 523.

19

*Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009). "In all events," the courts have stated that "it is not good policy [to allow a creditor] to usurp the trustee's role in chapter 7" and "[t]he system works when a statutory fiduciary is steering the ship." *Id*. (citation omitted).

49.     As a safeguard against unnecessary claims litigation or creditors acting in their own self-interests, the courts have held that a trustee may settle claim objections initiated by creditors. The courts have discerned that "[a]llowing the creditor to initiate the claim objection brings to light possible flaws or shortcomings of the claim of which the trustee may be unaware." *DVR*, 582 B.R. at 521.

> Once initiated, the trustee can then evaluate the merits of the claim objection. If he concludes the objection is well founded, he does nothing more and allows the objector to continue the litigation. If he finds the objection not well founded or that further litigation will cause unnecessary delay or risk to the estate, then he might propose a settlement of the claim objection.

*Id.  See also In re Futterman*, 2019 WL 2553614 (holding that "[s]o long as the Court approves, the Trustee has the authority to settle claims, and that is true even if other parties in interest have filed objections to those claims") (citations omitted); *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007) (rejecting a creditor group's arguments that the chapter 11 trustee lacked authority to settle their objections to certain proofs of claim); *Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 659 (Bankr. D. Conn. 2001)(approving a proposed settlement between the chapter 11 debtor and a creditor resolving the creditor's proof of claim, where the chapter 11 debtor had objected to the claim).

50.     In the Objection, the Objector cites the case *In re CP Hall*, 513 B.R. 540 (Bankr. N.D. Ill. 2014), wherein the court held that an alleged lien creditor who filed objections to two other alleged lien creditors' claims had the right to a ruling on his objections before the court approved a settlement between the other alleged lien creditors and the chapter 7 trustee. The courts have distinguished the holding in *CP Hall* in cases such as the case at hand, where an creditor's individual rights are not in dispute, finding that outcome in the *CP Hall* may have been tied to the nature of the claim objection involved stating that "when a claim objection involves the individual rights of the objecting creditor, such as a dispute over competing lien rights, it is intrinsically different from a claim objection that only disputes a creditor's entitlement to a distribution from an estate or its assets." *DVR*, 582 B.R. at 512-13.  Unlike the objecting creditor in *CP Hall*, the individual rights of the Objector are not in dispute and, therefore, the holding in *CP Hall* is inapplicable to the case at hand.

51.     Moreover, this Court reached an opposite conclusion than *CP Hall* in the case, *Law Debenture Trust Co. v. Kaiser Aluminum Corp. (In re Kaiser)*, 339 B.R. 91 (D. Del. 2006). In *Kaiser*, this Court stayed a creditor's claim objection and subsequently mooted the objection after proceeding to evaluate a debtor-in-possession's settlement which was meant, at least in part, to resolve that objection. *Id*. at 93. The creditor, Law Debenture Trust Company of New York ("LDTC"), appealed to the District Court of Delaware arguing that this Court erred in considering a settlement between the debtors and another creditor, Pension Benefit Guaranty Corporation ("PBGC"), without first resolving its objection to PBGC's claim.  *Id*. LDTC maintained that it had the right to bring a claim objection under Bankruptcy Code section 502(a), and that there is a conflict between

21

section 502(a) and Bankruptcy Rule 9019 which pertains to the approval of settlements. *Id*. at 94. The Delaware District Court disagreed and found there was no direct conflict between section 502(a) and Bankruptcy Rule 9019 which would require bankruptcy courts to resolve claim objections before approving a settlement. Accordingly, the Delaware District Court affirmed the ruling of this Court staying the claim objection and approving the settlement. *Id*.

52. Unquestionably, the Objector filed the Objection in its own self- interest, and not in the interests of the general creditors' body as a whole. The Trustee is the fiduciary for the Bankruptcy Estate for *all* creditors and is better suited than the Objector to determine when and whether to pursue claim objections.

**D.** **The Objection is Premature and Should Not be Ruled on Prior to the Conclusion of the Adversary Proceeding.**

53. Ruling on the Objection at this juncture is premature. Simply put, the Objector has put the cart before the horse. The key determinant of whether or not to allow the Claim depends upon the disposition of the Adversary Proceeding.  In other words, the allowance or disallowance of the Claim turns on whether or not the Defendants perpetuated a fraud on DSI Holding's creditors, including MPT.

54. As a matter of fact, the Objecting Defendants have already attempted to have Judge Carey rule that any claim filed by the Trustee on behalf of the creditors would be untimely under Bankruptcy Rule 3004.  In the Memorandum Opinion, Judge Carey declined to rule on the timeliness of any such claim stating *"[a]t this stage in the proceeding, I cannot determine whether facts may develop that would allow tardy filing of claims."* *DSI Renal Holdings*, 574 B.R. at 479 (emphasis added).

22

55.     Nothing has changed since the entry of the Memorandum Opinion. At this stage, it is premature to rule on the Objection. *See In re Kology*, 2013 WL 6331016, No.12-14992 (Bankr. D. Mass. Dec. 5, 2013) (holding that resolution of the objection to claim premature until the title litigation was resolved."); *In re Cannon*, No. 15-30451, 2017 WL 3508772, at *1 (Bankr. N.D. Fla. 2017) (overruling a claim objection asserted by a co-defendant as premature finding that it would be a waste of judicial resources to determine the claim objection prior to the resolution of a pending adversary proceeding); and *In re Harris Grp., Inc.*, 64 B.R. 417 (Bankr. E.D. Penn. 1986)(holding that chapter 11 debtor's objection to claim during pendency of claimant's motion for examination  was premature and would not be sustained.)

56.     Moreover, at this point, the Bankruptcy Estate is insolvent; thus, no purpose is served by proceeding with the Objection. "[T]he necessity for creditors to file and the courts to adjudicate claims depends on the existence of assets in the debtor's estate. The Bankruptcy Rules plainly contemplate pretermitting claims allowance and objection procedures when there are no distributable assets." *Kipp Flores Architects, LLC v. Mid-Continent Cas.Co*., 852 F.3d 405, 412 (5th Cir. 2017). "Where there are no assets to distribute, there also is no purpose served by considering objections to proofs of claim.... Accordingly, bankruptcy courts generally do not rule on objections to claims in no-asset chapter 7 cases." *In re Holland*, No. 14-20990, 2015 WL 4600382 at *2 (Bankr. S.D. Ga. July 30, 2015).  *See also In re Clearview Builders, Inc*., No. 5-05-bk-50857, 2012 WL 4113922, at *2 (Bankr. M.D. Penn. Sept. 18, 2012)("the Court cannot determine the extent of the assets and liabilities of the estate of either Mr. Slayton or Clearview Builders, Inc. based upon the record. It may very well be that neither estate will be impacted by the other.

23

Therefore, I will not make a ruling at this point concerning the amount of claim that the claimant has against Mr. Slayton."); *In re Cardsystems Solutions, Inc.*, 4:06-bk-00515, 2007 WL 4166184, at *3 (Bankr. D. Ariz. Nov. 19, 2007) ("As for the claims objection activity, pursued when the Debtor had a diminishing pool of assets to distribute, such effort was premature and served a limited purpose . . . .")

57.    In a relatively recent case, *Cannon*, *supra*, the bankruptcy court overruled a claim objection asserted by a co-defendant as premature finding that it would be a waste of judicial resources to determine the claim objection prior to the resolution of the pending adversary proceeding. When reaching this determination, the court initially recognized that

> Section 502(a) of the Bankruptcy Code provides that a claim or interest is deemed allowed unless a party in interest objects [and] [i]n a Chapter 7 case, the Chapter 7 Trustee is usually the proper party to review and object to claims." A "party in interest," the court stated, "is not defined by the code, but it is typically one who has a pecuniary interest in the estate being administered.

*Cannon*, No. 15-30451, 2017 WL 3508772, at *1 (Bankr. N.D. Fla. 2017). The court found that the objector was not a creditor in the bankruptcy case. Rather, the objector's only involvement was in his capacity as a defendant in the adversary proceeding. As a consequence, the court held that the objector did not have standing to prosecute the objection. *Id*.

58.    The court went on to note that even if the objector had standing, it was premature to consider claim objections because the trustee had not collected any assets to distribute to creditors. The court expanded that "the purpose of objecting to claims is to determine which filed claims will be allowed for purposes of distribution of assets collected by the trustee." *Id*. The court noted that the trustee had not collected any money and had

24

identified only one potential asset: $60,000.00 held in a bank account pursuant to a pre-petition garnishment that was the subject of the adversary proceeding in which the objector was a party defendant and claimed the money as his. If the trustee prevailed in the adversary proceeding, the court reasoned, then the $60,000 would come into the bankruptcy estate. On the other hand, the court found that if the trustee was unsuccessful, then the $60,000 would not become property of the bankruptcy estate and, in that event, there would be nothing for the trustee to distribute to creditors. The court concluded by stating that "[i]f there is nothing to distribute to creditors, there is no reason to take up valuable judicial and attorney time and effort determining objections to claims, because none of the creditors would receive any distribution from this estate." *Id*.

59.     Likewise, in the instant case, there are little to no assets to distribute to the creditors in the Bankruptcy Case. Whether or not there will be a distribution in the Bankruptcy Case depends on the outcome of the Adversary Proceeding. Thus, ruling on the Objection is premature as it would be a waste of judicial resources to proceed with the Objection at this time.

## **CONCLUSION**

60.     Based upon the foregoing, MPT requests that this Court grant the Motion and continue the final hearing on the Objection pending conclusion of the Adversary Proceeding.  MPT requests such other and further relief as this Court deems just.

January 9, 2020

25

Dated:  January 9, 2020                    **MORRIS JAMES LLP**


/s/ Carl N. Kunz, III
Brett D. Fallon (DE Bar No. 2480)
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone:  (302) 888-6800
Facsimile: (302) 571-1750
E-mail:  bfallon@morrisjames.com
E-mail:  ckunz@morrisjames.com

           -and-

Timothy M. Lupinacci
W. Patton Hahn
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
1400 Wells Fargo Tower
420 20th Street North
Birmingham, AL 35203
Telephone: (205) 328-0480
Facsimile:  (205) 488-3766
E-mail:  tlupinacci@bakerdonelson.com
E-mail:  phahn@bakerdonelson.com
E-mail:  rhullett@bakerdonelson.com

Counsel for MPT of Bucks County, L.P.