IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | |
| ) | Case No: 11-11722 (KBO) |
| DSI RENAL HOLDINGS, LLC, *et al.,* ) | |
| ) | Chapter 7 |
| Debtor. ) | |

**REPLY OF EVA LEMEH, CHAPTER 7 TRUSTEE FOR BUCKS COUNTY ONCOPLASTIC INSTITUTE, LLC TO OMNIBUS OBJECTION OF HEALTHCLAIM RECOVERY LLC TO MOTIONS TO CONTINUE OR STAY OBJECTION TO CLAIMS 15 AND 16**

Eva Lemeh, as Chapter 7 Trustee for Bucks County,[1] hereby replies to Healthclaim Recovery LLC's Omnibus Objection to Motions to Continue or Stay Objections to Proofs of Claim 15-1 and 16 (the "Continuance Objection") and in support thereof states as follows:

**I.  PRELIMINARY STATEMENT**

1.  Trustee Giuliano's complaint in the Fraudulent Conveyance Adversary makes a compelling case that the Defendants are liable for at least $425 million in damages based, <u>inter alia</u>, on fraudulent transfers designed to avoid liabilities to creditors of Bucks County and other entities. The Defendants know that they are subject to substantial liability, in part because of the many email communications that clearly show in writing the intent behind their actions.

2.  Having been caught red-handed as to the fraudulent transfer scheme, and hoping to minimize their liability in the face of this compelling evidence, the Defendants have hatched a new scheme by which they can escape liability by paying no more than $3.3 million. They make a vague offer that they will pay off all creditors in the DSI Renal Holdings case in order to make the whole thing go away, if only they can first successfully attack the two largest claims in the case, which together exceed $300 million. But their offer to pay all claims is illusory, as set

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Motion of Eva Lemeh, Chapter 7 Trustee for Bucks County Oncoplastic Institute, LLC to Continue Claims Objection of Healthclaim Recovery LLC to Claim 16 (the "Motion to Continue").

forth in section II A below.

3. The Defendants' new scheme to pay off all claims except for MPT and Trustee Lemeh depends entirely on their erroneous assumption that disallowing the claims of MPT and Trustee Lemeh will be "straightforward", and that Trustee Lemeh's claim is "easy to dispose of." In fact, Trustee Lemeh's claim, which was recently amended (the "Second Amended Claim") sets forth a valid claim that the DSI Renal Holdings LLC estate is liable for the debts in the Bucks County case based on alter ego, veil piercing, and fraud arising from a myriad of facts, as set forth in section II B below. A copy of the Second Amended Claim is attached hereto as Exhibit "A".

4. It is wishful thinking by the Defendants that resolution of these complex issues will be "straightforward" and "easy" and that Healthclaim Recovery's standing argument will win the day without "requir[ing] development of a factual record". For the reasons set forth in section II D below, any determination of the Second Amended Claim will require a substantial hearing regarding detailed facts and legal argument.

5. Contrary to Healthclaim Recovery's assertions, there are compelling reasons why the Fraudulent Conveyance Adversary should be determined before the Court determines the claims objections:

    a. Healthclaim Recovery contends that the DSI Renal Holdings, LLC estate will not incur any expense from prosecution of Healthclaim Recovery's objections, as Healthclaim Recovery is bearing the burden so the Trustee does not have to. This ignores the fact that <u>all</u> objections to any given claim should be considered at the same time. Otherwise, the Court and the claimant will be forced to waste their time on duplicate proceedings regarding the same claim. <u>See</u> section II I below.

    b. Contrary to Healthclaim Recovery's position, there <u>is</u> substantial overlap in issues as between the Second Amended Claim and the Adversary Proceeding, as set forth

2

            in section II F below.

      c.      After their substantial wrongdoing, the Defendants have litigated the Fraudulent Conveyance Adversary for more than 7 years.  Under the circumstances, their threat that resolution of the Fraudulent Conveyance Adversary and appeals therefrom will take years should not sway the Court.  If Healthclaim Recovery is truly interested in resolving these issues, it could cooperate to speedily resolve the Fraudulent Conveyance Adversary.

      d.      This Court recently ruled on the Cap Motion and denied the motion with respect to claims other than Fraudulent Transfer.  Healthclaim Recovery's strategy of collaterally attacking claims to reduce their exposure in the Fraudulent Conveyance Adversary has therefore not succeeded, making the exercise of litigating their objections to claims at this time wasteful.

6.      Regardless of whether Healthclaim Recovery has standing to object to the claims of other unsecured creditors, the parties agree that the Court has the ability to manage its docket and consider the claims objections at a time which is appropriate.  Hearing claims objections <u>after</u> any recovery from the Fraudulent Conveyance Adversary will ensure that the parties and the Court are not engaging in a meaningless exercise by litigating complex claims objections while there are no funds in the estate to pay such claims.  <u>See</u> section II I below.

## II.    <u>ARGUMENT</u>

### A.    <u>Healthclaim Recovery's Offer to Pay All Claims Following Disallowance of the Claims of MPT and Trustee Lemeh is Illusory.</u>

7.      The Continuance Objection states at paragraph 11 that the Defendants are prepared to pay or escrow what is required to satisfy all the remaining allowed claims, which exceed $3.3 million, <u>or</u> purchase <u>or</u> otherwise settle these claims.  This is not an actual commitment to pay all remaining claims.  It appears that the Defendants do not want to actually pay all of the claims, but instead want an opportunity to purchase some at a discount and negotiate others down in a settlement.  Left unsaid is what happens if Healthclaim Recovery is

unable to reach settlements with claimants that it considers acceptable. Those options for the Defendants make their offer illusory.

8. Also left unsaid in the Defendants' vague offer is the fate of administrative claims in the case, which are substantial and would need to be paid before the Court would consider whether the case should be dismissed on grounds that claims have been paid.

9. Further, and most importantly, the vague offer is conditioned on the claims of MPT and Trustee Lemeh being disallowed in their entirety, so that if the Court bought into this scheme and later did not disallow the claims of MPT and Trustee Lemeh entirely, the Defendants will have succeeded in reversing the proper order of these proceedings without paying out anything on their "offer". If Healthclaim Recovery were serious about making an offer to resolve claims in this case, it would bind itself now to pay all claims in the DSI Renal Holdings case in full following the outcome of its claims objections, but it will not do so as it would then face liability for more than $300 million.

    **B.**    **The Second Amended Claim Alleges Substantial Facts to Support Alter Ego, Veil Piercing, and Fraud.**

10. The Second Amended Claim asserts a valid claim for alter ego, veil piercing, and fraud based, inter alia, on the following facts:

    a. From 2005 when the Bucks County Hospital was being developed, through early 2009, when it was being shut down, the thousands of purchase orders issued to vendors who provided goods and services to the Bucks County Hospital were issued not by the Bucks County Hospital, but by and under the name of Debtor DSI Renal Holdings/DSI Holding Company (and creditors reasonably believed that they were one and the same entity).

    b. Bucks County was not adequately capitalized and was insolvent.

    c. The Bucks County Hospital's bills were routinely paid by Debtor DSI Renal Holdings/DSI Holding Company and

           affiliate DSI Renal.

    d.    DSI's personnel had controlled the Bucks County Hospital.

    e.    The Bucks County Hospital's funds were co-mingled with funds of DSI and its affiliates.

    f.    Corporate distinctions were not observed as between the ultimate parent (DSI) and their operating subsidiary, the Bucks County Hospital.

    g.    During Ms. Lemeh's work on the Bucks County bankruptcy case, her counsel discovered that DSI was providing all accounting and other back office services for Bucks County, purportedly pursuant to the terms of a written services agreement, but DSI was not compensated pursuant to that agreement until approximately 90 days prior to the Bucks County bankruptcy filing.

    h.    Representatives, employees, agents and attorneys for Bucks County and DSI actively concealed facts from Ms. Lemeh and/or misrepresented facts to Ms. Lemeh and her counsel in a concerted effort to conceal the true relationship between Bucks County and DSI.

    i.    Testimony and documents detailed in Paragraphs 90 and 91 of the Complaint, and incorporated by reference in the Second Amended Claim, establish that DSI and its shareholders intentionally defrauded Bucks County and its creditors.

    **C.**    **Trustee Lemeh's Amendment of Her Claim is Entirely Appropriate.**

11.    Healthclaim Recovery suggests in several instances in its Continuance Objection that Trustee Lemeh's recent amendment of her claim was somehow improper or extraordinary. Defendants are wrong in this regard. On the contrary, claims are commonly amended and amendments to proofs of claim are generally freely permitted.

12.    Although Federal Rule of Bankruptcy Rule 7015 does not necessarily apply to the amendment of a proof of claim, bankruptcy courts have looked to Rule 7015 and Federal Rule of Civil Procedure 15 for guidance with respect to claim amendments. These rules commit the

decision to allow an amended claim (upon objection) to the bankruptcy court's sound discretion. See <u>In re Trans World Airlines</u>, 145 F.3d 124, 141 (3d Cir. 1998) (internal citations omitted); <u>Hatzel & Buehler, Inc. v. Station Plaza Assocs., L.P.</u>, 150 B.R. 560, 562 (Bankr. D. Del. 1993). In general, the Third Circuit follows a policy of liberality in allowing amendments. <u>In re Quinn</u>, 423 B.R. 454, 463 (Bankr. D. Del. 2009) (citing <u>Trans World Airlines</u>, 145 F.3d at 140-41).

13. Even though a claim that is amended post bar-date must be scrutinized to assure that it is not a new claim, amendment is nevertheless "'freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'" <u>Hatzel & Buehler, Inc.</u>, 150 B.R. at 562 (quoting <u>In re International Horizons</u>, 751 F.2d 1213 (11th Cir.1985)); see also <u>In re Quinn</u>, 423 B.R. at 463 ("Amendment often is permitted when the original claim provides notice of the existence, nature, and amount of the claim or to cure obvious defects, describe the claim with greater specificity or plead a new theory of recovery on facts of the original proof of claim." (internal citations omitted)).

14. Here, the Second Amended Claim fits squarely within the principles discussed by the Delaware Bankruptcy Court in <u>Hatzel & Buehler, Inc.</u> and <u>In re Quinn</u>. Indeed, Trustee Lemeh filed the Second Amended Claim to, inter alia: (i) update the calculation of the amount due to account for the passage of time, specifically, the accrual of ten years of interest and costs such as attorneys' fees, and (ii) cure the purported deficiencies raised by Healthclaim Recovery in its Claims Objection, which asserted that Trustee Lemeh had failed to set forth a sufficient factual basis for the claim. Thus, the attachment to the Second Amended Claim includes a higher level of legal and factual specificity. The Second Amended Claim still seeks the same liability claimed in Trustee Lemeh's prior proofs of claim in this matter—to hold the debtor liable for all debts owed to the creditors of Bucks County.

15. Under these circumstances, amendment of the claim was entirely appropriate and should be freely allowed.

**D.  Determination of the Second Amended Claim Will Not Be Straightforward or Easy.**

16. Healthclaim Recovery's entire position is based on the faulty premise that resolution of the Second Amended Claim will be straightforward and easy, and that the claim can be resolved without any factual record.

17. First, under Delaware Bankruptcy Court procedure – unlike what may happen under New York Bankruptcy Procedure – the facts and legal arguments regarding the Claims Objection will be presented in a single proceeding. At that hearing, Trustee Lemeh will present factual evidence and make legal argument regarding, inter alia, the thousands of purchase orders issued to Bucks County vendors in the name of DSI, Bucks County's insolvency, the payment of Bucks County bills by other entities, the control of Bucks County by other entities, the co-mingling of funds, the failure to observe corporate distinctions, the concealment of facts and the active effort to ensure that Bucks County creditors were not paid. There will be no separate hearing at which Healthclaim Recovery's standing argument or other arguments are considered in isolation. Indeed, Healthclaim Recovery itself pointed out that to rule on the principal theory on which it relies to dispose of the Second Amended Claim – lack of standing – assessing the factual allegations made is "critical." See Claims Objection at 21.

18. Second, there will be nothing straightforward or easy regarding the facts or legal issues necessary to resolve the claim. Issues such as confusion among creditors as to the entities involved, insolvency, inter-company transactions, control of Bucks County, comingling of funds, and the fraud committed to make sure that Bucks County creditors were not paid are fact-intensive will require substantial amounts of evidence and legal argument.

121334681_2

19. Third, the very basis which Healthclaim Recovery boasts that it will rely on to quickly and easily dispose of the claim – that Trustee Lemeh lacks standing to pursue the claim – is fundamentally flawed. Healthclaim Recovery relies on <u>In re Emoral</u>, 740 F.3d 875, 879-80 (3d Cir. 2014) for the proposition that Trustee Lemeh would be barred for lack of standing from pursuing a veil piercing theory on behalf of creditors if any single creditor of Bucks County could not bring such a claim. <u>Emoral</u> says nothing of the sort, and actually supports Trustee Lemeh's standing.

20. In <u>Emoral</u>, the Chapter 7 Trustee threatened causes of action including a fraudulent transfer claim against Aaroma Holdings LLC, which had acquired the assets of Emoral prepetition. The trustee for Emoral settled with Aaroma for $500,000 and released all causes of action which were property of Emoral's estate in the settlement. <u>Id.</u> at 877-88. Certain personal injury claimants filed suit against Aaroma alleging that Aaroma was a mere continuation of Emoral, so that it succeeded to all of Emoral's liabilities. <u>Id.</u> The Third Circuit concluded that causes of action for successor liability, alter ego and veil piercing were properly characterized as property of the bankruptcy estate, and that it is entirely appropriate for a bankruptcy trustee to bring such claims. <u>Id.</u> at 880-882. Accordingly, the Third Circuit in <u>Emoral</u> concluded that the cause of action for successor liability against Aaroma belonged to the bankruptcy estate, and not to individual creditors, so that such claim was released by the Emoral trustee in the settlement with Aaroma. <u>Id.</u> at 882.

21. Nowhere did the Third Circuit suggest that the bankruptcy trustee would be barred from bringing the successor liability claim if any single creditor of Emoral could not bring such a claim. To the contrary, <u>Emoral</u> concludes that successor liability, alter ego and veil piercing claims are general claims which belong to the bankruptcy estate and it is proper for a bankruptcy trustee to assert them. Trustee Lemeh has standing to bring her claims, and

8

Healthclaim Recovery will not prevail on grounds of standing.

### E. Reverse Bifurcation is Not Appropriate Here.

22. Healthclaim Recovery misrepresents the holding of the 9th Circuit Bankruptcy Appellate Panel's unpublished opinion in In re Integrated Knowledge Marketing, 2007 WL 7540949 (B.A.P. 9th Cir. 2007)[2] by suggesting that the Ninth Circuit Bankruptcy Panel – or any court – "adopted" a scheme similar to that proposed by Healthclaim Recovery as a "cost-effective" approach.  In Integrated Knowledge Marketing, fraudulent transfer defendants did object to some claims and effectively purchased other claims, whether through assignment or withdrawal of those claims.  The fraudulent transfer defendants then moved to dismiss the bankruptcy case based on a pledge that they would, using their own funds plus the funds in the estate, pay all remaining prepetition creditor claims and all administrative claims in the case in full.  The Bankruptcy Court entered orders setting the amount of fees payable to the trustee's counsel and dismissing the case, and counsel to the trustee appealed both orders.  The Ninth Circuit BAP dismissed the appeal of Trustee's counsel on grounds of lack of standing, and affirmed the Bankruptcy Court's ruling with respect to attorneys' fees.

23. The issue of whether claims objections could properly be brought by the fraudulent transfer defendants prior to resolution of the fraudulent transfer adversary was not before the Ninth Circuit BAP in Integrated Knowledge.  Further, there is no indication in Integrated Knowledge of whether there were funds available for distribution to unsecured creditors at the time the claims objections were litigated, which would have a bearing on whether litigation of the claims objections was appropriate at that time.  It does appear from an order in the bankruptcy court proceedings below that the issue raised in a claims objection in that case

---

[2] Healthclaim Recovery incorrectly refers to this unpublished opinion as arising in Ezra, Brutzkus, Gubner LLP v. Integrated Knowledge Marketing (In re Integrated Knowledge Marketing).

121334681_2

which resulted in a disallowance of a proof of claim of $26.5 million was quite simple – an equity holder asserted the $26.5 million claim based on ownership of equity, an obviously invalid claim. See Order disallowing $26.5 million claim attached hereto as Exhibit "B".

24. The Ninth Circuit BAP merely ruled, long after the claims objections had been decided, on whether the trustee's counsel had standing to appeal the dismissal order and whether the bankruptcy court committed reversible error in calculating the fee award for trustee's counsel. Thus Integrated Knowledge sheds no light on the issue of the proper timing of claims objections.

25. Further, while Healthclaim Recovery claims that reverse bifurcation is used in this jurisdiction and elsewhere, it has not shown controlling or persuasive authority for its use in the bankruptcy courts. Indeed, reverse bifurcation would not be appropriate here.

26. First, Healthclaim Recovery's reliance on In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig., 123 F. App'x 465 (3d Cir. 2005) is misplaced because that case involved a non-bankruptcy context regarding the enforcement of a settlement agreement in a pharmaceutical class-action. In that case, the Third Circuit did not conduct any deep analysis of the propriety of reverse bifurcation and did not issue any substantive endorsement of the concept but, instead, the Third Circuit was constrained to enforce the terms of a settlement agreement reached in the class action, which required plaintiffs who opted out of the settlement to stipulate to reverse bifurcation in any state court litigation. Diet Drugs, 123 F. App'x at 468-470. Indeed, the Third Circuit also emphasized that the ultimate decision to permit reverse bifurcation was with the state court trial judge and the Third Circuit even recommended to the District Court that the state court's ultimate authority be made even clearer. Id. at 472.

27. Second, Healthclaim Recovery's reliance on Section 2390 of Federal Practice &

10
121334681_2

Procedure is similarly unpersuasive in this context. That multi-volume treatise (which of course does not have the force of law) is intended for use in civil litigation in the federal district courts and, therefore, the discussion of reverse bifurcation is limited to civil litigation, noting that courts have most often used reverse bifurcation "to deal with the backlog and evidentiary complexity created by asbestos cases" and in other mass-tort or personal injury cases. 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2390, 155 (3d ed. 2008). Federal Practice & Procedure also explains that various authorities, including the Advisory Committee for the Federal Rules of Civil Procedure and various federal courts, have found that the procedure should be used sparingly. Id. at 169 n.18, 170 n.19.

28. In other words, neither the Diet Drugs case nor Section 2390 of Federal Practice & Procedure constitute authority for applying reverse bifurcation in a Chapter 7 bankruptcy contested matter. Further, Trustee Lemeh's Second Amended Claim is comprised of business liabilities, not mass-torts or products liability claims as in Diet Drugs. Moreover, it defies logic to address damages at this time as the debtor's bankruptcy estate has no funds to pay prepetition unsecured claims. Conversely, the defendant in Diet Drugs was Wyeth, a large pharmaceutical company that had recently agreed to fund a $3.75 billion settlement and, thus, presumptively had significant assets with which to discuss settlement. Hence, reverse bifurcation makes no sense at this time.

    **F.** **There is a Substantial Overlap of Material Facts Between Healthclaim Recovery's Objections and the Fraudulent Conveyance Adversary.**

29. The common issues relevant to resolution of the Second Amended Claim and the Fraudulent Conveyance Adversary include, inter alia, the following:

    a. The multiple factors which support alter ego and veil piercing set forth in paragraph 10 a-g above (creditor confusion based on invoices, insolvency, payment of bills by other entities, DSI's personnel controlling Bucks County Hospital, co-mingling of

11

    funds, failure to observe corporate distinctions, and provision of inter-company services at no charge) are the same facts which form the basis of fraudulent intent by DSI Renal Holdings/DSI Holding Company in engaging in intentionally fraudulent transfers;

  b. Active concealment and/or misrepresentation of facts to parties involved in the Bucks County bankruptcy in a concerted effort to conceal the true relationship between Bucks County and DSI;

  c. The multitude of facts alleged at paragraphs 90-91 of the Trustee's complaint support the fraudulent intent of the parties involved and confirm that DSI representatives acknowledged the basis for alter ego or veil piercing liability.

### G. Additional Discovery is Necessary Before Litigation of Trustee Lemeh's Claim.

30. Healthclaim Recovery suggests in its Continuance Objection that no additional discovery will be required by Trustee Lemeh in order to litigate the Claims Objection.

31. In fact, Trustee Lemeh has conducted no discovery with respect to the Claims Objection and must be provided an opportunity to do so.

32. While there exists some overlap in the issues between the Fraudulent Conveyance Adversary and the Claims Objection, the issues relevant to the Claims Objection have not been fully developed in the Fraudulent Conveyance Adversary.

33. By way of example, in order to determine the issue of how funds were transferred among DSI Renal, Inc., DSI Holding Company, DSI Hospitals, Inc. and Bucks County, Trustee Lemeh will need bank records for all four of these entities. Apparently virtually no bank records have been produced in discovery thus far.

34. In addition, Trustee Lemeh seeks to review, _inter alia_, payroll records, financial statements, and other documents. Trustee Lemeh will need to conduct discovery with respect to the fraud committed as to the Bucks County bankruptcy filing and the efforts to conceal the Bucks County/DSI relationship.

35. After receiving and reviewing documents, Trustee Lemeh expects to take multiple depositions, including the depositions of some individuals who were previously deposed for purposes of the Fraudulent Conveyance Adversary. The depositions of the individuals already deposed in the Fraudulent Conveyance Adversary did not include questioning on many issues relevant to the Claims Objection. Accordingly, there will be no quick and easy resolution to the Claims Objection.

36. Further, because of the substantial creditor confusion regarding the distinction between the Bucks County and DSI entities, Trustee Lemeh recently filed a motion to extend the bar date in the Bucks County bankruptcy case through May 15, 2020. Additional claims are expected to be filed. The total amount of claims in the Bucks County case will therefore not be known prior to May 2020.

### H. Healthclaim Recovery Does Not Have an Unfettered Right to Force the Resolution of Claims Objections at Any Time that Suits Its Purposes.

37. Healthclaim Recovery states in its Continuance Objection that a creditor's right to object to proofs of claim is unfettered and unqualified, citing to the decisions of the U.S. Bankruptcy Court for the Middle District of Pennsylvania in Mechanicsburg Fitness and the U.S. Bankruptcy Court for the Northern District of Illinois in C.P. Hall. As set forth more fully in the Motion to Continue, however, there is a split of authority on the issue of the standing of unsecured creditors in a Chapter 7 to object to the claims of other unsecured creditors. The statement of the Delaware District Court in Savidge that in a Chapter 7 case, the majority rule is that no general creditor has standing to contest another general creditor's claim certainly supports Trustee Lemeh's position.

38. Regardless of whether Healthclaim Recovery has the right to file a claims objection, the parties appear to agree that the Court has the ability to manage its docket and

13

consider claims objections at a time which is appropriate in the context of this bankruptcy case. Accordingly, Healthclaim Recovery does not have an unfettered right to force its claims objections to be determined at whatever time suits its purposes.

### I. Claims Objections Should Not be Litigated While There are No Funds to Pay Unsecured Claims.

39. As set forth at page 5 of the Motion to Continue, there are no funds in the DSI Renal Holdings case available to pay prepetition unsecured claims, so claims objections should not be litigated at this time.

40. Healthclaim Recovery maintains (1) that the DSI Renal Holdings LLC estate will not incur any expense from prosecution of Healthclaim Recovery's objections because Healthclaim Recovery is bearing the burden of doing so, see Continuance Objection at 3; and (2) the Bucks County estate will bear no burden from litigation because it has retained counsel to prosecute the proof of claim on a contingency fee basis, see Continuance Objection at 11. Healthclaim Recovery's position in this regard overlooks the obvious.

41. First, Trustee Giuliano may wish to assert different objections to the Second Amended Claim. In order to efficiently determine any objections to the Second Amended Claim, Healthclaim Recovery's objection and any objection of Trustee Giuliano must be determined at the same time. Any other procedure would force Trustee Lemeh to prove the merits of the Second Amended Claim twice, and force the Court to address the merits of the Second Amended Claim twice. Healthclaim Recovery cannot single-handedly assume responsibility for all objections to the Second Amended Claims and relieve Trustee Giuliano of the burden to do so. Accordingly, Trustee Giuliano would be forced to incur substantial hourly fees with respect to claims objections at a time when there are no funds in the DSI Renal Holdings Case to pay prepetition unsecured claims.

42. Healthclaim Recovery is correct that the Handbook for Chapter 7 Trustees published by the Office of the United States Trustee is not binding on this Court. However, the concept stated in the Handbook – that Chapter 7 Trustees should only review and object to claims if a purpose would be served by doing so – comes directly from 11 U.S.C. §704(5) (the duties of a trustee include "(5) <u>if a purpose would be served</u>, examine proofs of claim and object to the allowance of any claim that is improper"). Accordingly, there is statutory support that Trustee Giuliano should not be forced to examine and object to claims at this time.

43. Second, there are no funds in the Bucks County estate. Just because the Bucks County estate has retained counsel on a contingency basis with respect to the Second Amended Claim does not mean that the Bucks County estate will bear no burden in litigating the Second Amended Claim at a time when there are no funds in either the DSI Renal Holdings case or the Bucks County case. If the Second Amended Claim is litigated now, both Trustee Lemeh and her counsel will need to spend a substantial amount of time and effort with respect to discovery and litigation of the claim. Further, the Bucks County estate will incur claims related to the expenses incurred with respect to such discovery and trial.

## III.   CONCLUSION

44. The parties comprising Healthclaim Recovery are the very parties who engineered a complex series of transactions in an effort to defraud creditors of DSI Renal Holdings LLC and Bucks County. Neither the Court nor claimants should run to their rescue by reversing the normal order of claims objections and engaging in substantial litigation over claims at a time when there are no funds in the estate to pay claims.

WHEREFORE, Trustee Lemeh respectfully requests that the Court continue indefinitely its consideration of the Claims Objection until the Fraudulent Conveyance Adversary has been resolved.

Respectfully submitted,

Dated:  February 13, 2020

/s/  Peter C. Hughes
**DILWORTH PAXSON LLP**
Peter C. Hughes
One Customs House – Suite 500
704 King Street
P.O. Box 1031
Wilmington, DE 19801
Telephone: (302) 571-9800
Facsimile: (302) 571-8875

– and –

Lawrence G. McMichael
Peter C. Hughes
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

– and –

Phillip Young
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Telephone: (615) 465-6008

*Counsel for Eva Lemeh, as Chapter 7 Trustee of Bucks County Oncoplastic Institute LLC*